# SAMUEL G. TAYLOR
## *v.*
# WILLIAM T. HOPKINS.

1. TRUSTEE—*unable to delegate power.* A trustee who is empowered to sell and convey land to pay debts, is unable to delegate the power to another. He is selected and confidence is reposed in him by the parties, and he must execute the trust. He may employ an auctioneer, but must be present and supervise and control the sale for the best interests of the parties, and should, as far as he may be able, to prevent the sacrifice of the interests of either party.

2. SAME—*fraud in sale of the trust property.* Where a sale of trust property is conducted by an agent of the trustee, and the creditor becomes the purchaser of valuable property for but a trifling sum, it creates a strong presumption that the transaction was fraudulent, especially so when it is done in extinguishment of a lien to secure a large debt, and the purchase is made by arrangement in the name of another, and then confesses judgments, and the lands are sold under them.

3. SAME—*his sale must conform to the power.* A trustee, in selling real estate, must comply with the power in the deed, and any material deviation from it will defeat the sale; as where he fails to give the required notice for the requisite time.

4. SALE—*fraudulent ratification.* A sale irregular and fraudulent, made by a trustee, is not cured by acquiescence by delaying to bring suit for three years to set aside the sale and other proceedings. A long acquiescence in unauthorized act of an agent will be held to amount to a ratification by the principal.

5. SAME—*notice of irregularity to purchaser under execution. Held,* that, where the trustee sold in disobedience to an injunction, and failed to give the notice required by the deed of trust, a creditor of the purchaser at such a sale is chargeable with notice of such irregularities. Had the injunction been dissolved and the bill dismissed, it would have presented a different question. An act performed by persons restrained by injunction in disobedience to its mandate, is voidable, as all parties connected with the act are chargeable with notice.

WRIT OF ERROR to the Circuit Court of Grundy county.

This was a suit in chancery commenced by William T. Hopkins, in the Grundy Circuit Court, against Elihue Granger, Addison Weeks, Elias Shipman and Samuel G. Taylor. The bill was filed for the purpose of removing clouds on the title of complainant, by setting aside a sale made by a trustee of the property in controversy on account of fraud and a failure to pursue the authority contained in the deed, and in violation of an injunction. Also a purchase made by Taylor under an execution against the purchaser at the trustees' sale, with notice of the fraud, and that there was not the proper notice of the sale, and that it was made in disobedience to an order of the court restraining the sale. Answers were filed, proofs were taken and the cause regularly heard by the chancellor.

On the hearing the court below found the sale by the trustee to be void, and ordered it, and the deed under the sheriff's sale, to be set aside. Defendant Taylor brings the case to this court on error and asks a reversal of the decree.

Messrs. HELM, TAYLOR & PENCE, for plaintiff in error.

Mr. GEORGE C. CAMPBELL, for defendant in error, Mr. W. T. HOPKINS, *pro se.*

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears from this record, that Couch was indebted to Granger, in the sum of twelve hundred dollars, one-half due in one year and the other in eighteen months. To secure its payment, he, on the first day of January, 1858, executed his notes to Granger, and a deed of trust to Shipman, on the premises in controversy. By the terms of the deed, the trustee was authorized to sell the land, on a default of payment, at auction, to the highest bidder for cash, after giving ten days' notice of the time and place of sale, in a newspaper published in Grundy county. After the maturity of the first note, the trustee advertised the property for sale, on the third day of March, 1859, and while the second note had some months to

run, defendant in error, who had, on the second day of March, 1858, become the purchaser of the property from Couch, subject to the trust created by Couch's previous deed, filed his bill, on the day advertised for the sale, to enjoin the trustee from selling the premises, on the ground that only one of the notes had matured, and that Couch had other property out of which the money could be made.

On filing the bill, an injunction was issued on the same day, restraining the sale. That cause was continued from time to time until the December Term, 1859, after which it seems to have been dropped from the docket, without any order or decree disposing of the case. It does not appear from the record that the case was ever tried, or the injunction dissolved, or the case dismissed.

On the 23d of August, 1859, a sale was made by an agent of the trustee, and the property was bid off by Granger, at ten dollars for each tract, in the name of Weeks, and on the 1st of September, 1859, Shipman executed a deed to Weeks. This sale and conveyance was made while the injunction was in full force. At this sale, neither the trustee nor Weeks, to whom the conveyance was made, was present. Nor was the deed, thus made, recorded until the 13th of April, 1860. And, on the 5th day of that month, Taylor obtained a judgment against Hymer and Weeks, for the sum of $521.84, on which an execution was issued on the same day, and placed in the hands of the sheriff of Grundy county, and he, on the 17th day of that month, levied upon the north half of the quarter section. This levy was followed by a sale of the land, and it was purchased by Taylor, and a sheriff's deed was subsequently issued to him. On the 4th day of May, 1860, Hale & Ayre recovered a judgment in the Superior Court of Chicago, against Hymer and Weeks, for $525.80 and costs. An execution was issued on the same day, and delivered to the sheriff of Grundy county, who levied it on the 6th of that month, on the portion of the quarter lying north of the railroad, and a sale was made on the 30th of that month, when Taylor became the purchaser; and the premises not having

been redeemed, on the 11th day of September, 1861, the sheriff executed a deed to Taylor for the premises sold under the latter execution.

Defendant in error, on the 19th day of July, 1862, filed this bill to set aside the deed from the trustee to Weeks, as well as the levies, sales, and sheriff's deeds, under Taylor's purchases on the executions. The grounds upon which he relies, are that the trustee's sale was fraudulent, and not in conformity with the provisions of the trust-deed, and in violation of the injunction, and that Taylor was chargeable with notice of the fraud and of the injuction when he purchased.

Appellant concedes that the sale by Shipman was voidable; but it is contended, that, until the sale was set aside, it could be levied upon and sold by a creditor of Weeks, the purchaser at that sale, and that title would pass to an innocent purchaser without notice; and that Taylor was such a purchaser. The trustee, in this case, seems to have acted in bad faith in selling and conveying the trust property. He thereby rendered himself liable to punishment for a contempt in violating the injunction, and we deem it unnecessary to inquire whether he incurred other liabilities, as that question is not before us for determination. He could not delegate his authority to another. He had been selected by the parties, and the trust had been reposed in him, although it seems their confidence had been misplaced. He might, it is true, have employed an auctioneer to cry the sale, under his immediate supervision, and he could have still controlled it for the promotion of the interests of the parties. But he was not present at the sale, and consequently could not know whether or not it was fairly or fraudulently made. It was his duty, so far as he reasonably could, to prevent a sacrifice of the interests of both parties. The person selected to make the sale, it seems probable, was reckless of the interests of Couch.

Again, where we see that the creditor became the purchaser of valuable property at only a trifling sum, it creates a strong presumption that the whole transaction was fraudulent. Why should we expect a creditor, claiming to have a debt secured

for so large an amount by a trust-deed on real estate, a portion of which sold on execution for over $1,000, to purchase it in extinguishment of his lien on the property at only twenty dollars, thus leaving more than his original debt unpaid, and not only so, but making the purchase in the name of another person? And when it is remembered that Weeks says it was purchased for him under a previous arrangement, and he confesses these judgments, and executions are at once issued, sent out of the county and levied on the property, it raises almost an irresistible inference that a fraud was intended to be perpetrated on the rights of defendant in error, or some other person in interest. Otherwise, why should Granger agree with the purchaser to bid the property for him, and carry out the agreement, by giving up his lien on such valuable property for the sum of twenty dollars, unless he expected to enforce payment from the securities on the notes, and secretly obtain a profit from the sale by the trustee? We can see no other solution to this question, than that there was a fraud intended on complainant, or on Couch's securities, or on both, and it has the appearance that the trustee was a party to the arrangement.

It also appears that the sale was made without the requisite notice. The evidence shows that the newspaper of the 10th day of August, 1859, contained a notice for the sale of this property, by the trustee, on the 13th of that month. It also appears, that the notice appeared in no other number of the paper during that month. Yet the sale was made on the 23d, and the property struck off on the bid of the creditor, for a mere nominal sum. And the fact, that the conveyance was made to another person, it would seem, was designed to prevent the sale from being set aside because it was in violation of the injunction, as the actors were parties to the bill. If the design of the trustee was to escape liability by appointing an agent, he would, of course, have been mistaken, as the course of justice cannot be obstructed by such shallow devices. The conduct of the trustee was so reckless, and the violation of all his duties is so manifest, and every principle of fairness so much outraged, that it is wholly indefensible, and counsel for

plaintiff in error admit that the sale could not be sustained, as between the parties to it. See *Thornton* v. *Boyden*, 31 Ill. 200.

Nor can it be considered that the irregularities and fraud entering into this sale, and the abuse of the trust, have been cured by acquiescence, amounting to a ratification, as was the case in *Williams* v. *Merritt*, 23 Ill. 623. In that case, it was held, that long acquiescence in unauthorized acts of the agent by the principal, having a full knowledge of all the facts, would raise a presumption of their ratification by the principal. In this case, the acts themselves were done in violation and fraud of a legal proceeding instituted by defendant in error. And he filed this bill within three years after the sale. In that case, there had been an acquiescence for about thirty years. Hence that case cannot be regarded as a precedent for this.

The question then arises, whether Taylor was chargeable with notice of these irregularities at the time he levied upon and purchased the property. The bill for the injunction was pending at the time, and the writ was in full force. The suit was in the county in which the land was situated, and it was the duty of Taylor to search the records of the county, and ascertain the condition of the title, and whether suits were pending affecting it. Had he done so, he would have found the bill still pending, and the injunction still in force staying the sale, and he would thereby have been informed that the trustee had acted in violation of the injunction when he made the sale. And we must presume, as the law required it, that he did examine, and that he found the bill pending, and the injunction in full force; but if he failed to make the examination, still he is as fully chargeable with notice as if he had made the examination. Then being charged with notice that the sale was prohibited and in violation of the injunction, he must have known that he could not defend himself as an innocent purchaser. He is chargeable with notice that the sale was positively prohibited, and he cannot complain if that sale, as well as his own, should be set aside. Had no steps been taken to prevent the sale, and Taylor had purchased without

notice, actual or constructive, it might, and no doubt would, have presented a very different question.

It is believed, that, when a court of equity enjoins a proceeding. at law, and the latter named court disregards the injunction and proceeds with the case, its action will not, for that reason, be void. But in such a case, the parties restrained by the injunction would be liable to punishment for violating the order of the chancellor. It is, however, true that when an injunction is issued to restrain individuals from performing particular acts *in pais*, a violation of the order by the persons restrained will render them liable for a contempt, and also render the act voidable as between all parties to the act, as well as those claiming under it who are chargeable with notice. Plaintiff had such notice, and must be held to the same rule as if he had been the original purchaser at the trustee's sale of the premises.

The decree of the court below is therefore affirmed.

*Decree affirmed.*