# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## NORTHERN GRAND DIVISION.

### SEPTEMBER TERM, 1870.

DENNIS BEACH

*v.*

CALVIN SHAW.

| 57 | 17 |
|---|---|
| 132 | 303 |
| 57 | 17 |
| 157 | 470 |
| 158 | 63 |
| 57 | 17 |
| 164 | 36 |
| 57 | 17 |
| 183 | 307 |

1. DEED OF TRUST—*sale under, by agent.* Notwithstanding an agent appointed by a trustee, with a power to sell the trust property, can not legally sell it in the absence of the trustee, still, a person holding simply the legal title, without having any equitable interest whatever in the trust property, can not in equity question such a sale.

2. DEED OF TRUST—*mortgage—judgment and sale.* Where a person held real estate, and mortgaged it to secure a debt he owed, then sold the property, subject to the mortgage, and a third person recovered a judgment against the purchaser, and had an execution thereon, and subsequently the purchaser executed a mortgage to another person, and afterwards made an assignment of the mortgaged premises with other real estate to a trustee for the benefit of his creditors, and a few days afterwards the sheriff sold

2—57TH ILL.

the property under the execution in his hands, when the trustee holding for the benefit of creditors, had the land bid in by and in the name of his clerk, but the trustee, out of the trust fund in his hands, paid the bid to the sheriff by his clerk, and charged it in his account of the trust fund, and the clerk paid nothing on the purchase, but he, some eleven years afterwards, procured a sheriff's deed for the property : *Held*, that he acquired no equity to or in the property by his sheriff's deed, and had no right to question an irregular sale under a prior mortgage.

3. MORTGAGE—*prior lien—sale under.* Where a prior mortgage falls due, and the property is sold by a trustee under a power in the deed, and a junior mortgagee becomes the purchaser at such sale, pays the money and enters into possession of the property and continues the possession: *Held*, such a person will not be disturbed by a person clothed merely with a naked legal title, but having no equitable rights; nor can such person redeem from the sale under the mortgage.

4. JUDGMENT—*satisfaction.* Where the assignee bid in the trust property in the name of his clerk, and paid the sheriff the amount of the judgment out of the trust funds in his hands, that operated simply as a satisfaction of the judgment, and let in the junior incumbrance next in rank to the first mortgage on the property, and if the purchaser from the first mortgagor, were to be allowed to redeem, he would be required to pay not only the bid by the second mortgagee under the sale on the first mortgage, but the amount of the second mortgage to him.

5. EQUITY—*relief given or refused.* A court of equity gives or witholds its remedies according to the equities of the case. A suitor must not only come to the court with clean hands, but he must come as well with rights in the subject matter entitling him to equitable relief. The court will not disturb rights of others on the application of one who has no equitable interest. In administering equitable relief, the court looks through forms to the substance of transactions.

6. SAME—*right to relief.* As a general rule, the holder of the legal estate under the mortgagor is a proper person to redeem, whether he holds as trustee for others or in his own right by a voluntary conveyance from the mortgagor, but when such grantee asks something more than the mere right to redeem, as to set aside a sale previously made under the mortgage, on the ground of irregularity in conducting it, but which was fair, and at which a third party became a purchaser in good faith, and the sum paid with his own incumbrance exceeded the value of the property, such holder of the legal title must show that he has equities before he can redeem.

7. SAME—*relief, to whom.* It is conceded that the grantee of the mortgagor, whether claiming as trustee for others or in his own right, and whether a purchaser for value or a mere volunteer, has the same right to set aside such a sale as the mortgagor himself, but a court of equity would not set

it aside for the benefit of one who has acquired the naked legal title as a mere formal purchaser, paying nothing, not expected by others to acquire any benefit, or intending himself to do so at the sale.

8. ALLEGATIONS AND PROOFS—*parties.* Where the holder of the legal title is the trustee, and he claims the right to redeem and set aside sales in the way of his title, he should frame his bill with that view, and not claim by his bill to do so in his own right and for his own benefit. Having claimed in the bill relief for his own benefit, he can not urge that the proceedings are for the benefit of others. Relief must be granted according to the frame and prayer of the bill, and if seeking to redeem for others he should make them co-complainants, and have all persons in interest before the court.

9. REDEMPTION—*who have the right.* In such a case, the mortgagor, his assignee or the creditors through the trustees, are the only persons who can claim the right to redeem, and they are not seeking the right in this case. Until they complain the court will not decree a redemption or set aside the sale, at the solicitation of a person having no equitable rights.

APPEAL from the Superior Court of Chicago.

Messrs. DENT & BLACK, for the appellant.

Mr. W. T. BURGESS, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

On the 15th day of April, 1855, Thomas B. Bryan, being then the owner of the north half of lot 4, block 15, Fort Dearborn addition to Chicago, mortgaged the premises to one Wylie, to secure four notes, executed by Bryan to him, amounting to $5,600.00.

On the 25th of March, 1856, Bryan sold and conveyed the property to Reed and Watkins, subject to said mortgage, and, by an express provision of the deed, which was executed as well by the grantees as by Bryan, they undertook the payment of the mortgage. In September, 1856, Reed conveyed his interest in the lot to Watkins. In February, 1857, Prince recovered a judgment in the Cook county court of common pleas.

against Reed and Watkins, for $1,522.72, and execution issued in May, 1857. In July, 1857, Watkins executed a mortgage on the premises to Beach, the appellant, to secure two notes, one for $4,000 and the other for $2,500, given for borrowed money. The order of the respective liens was, first, the mortgage to Wylie ; second, the judgment against Reed and Watkins, and third, the mortgage to Beach. On the 6th of August, 1857, Watkins made a general assignment of his property, including this lot, to Daniels, for the benefit of certain of his creditors, not including Beach, and on the 28th of the same month, the sheriff sold under an execution, issued on the Prince judgment, the premises in controversy, and also three other lots in the city of Chicago. All the property was struck off in the name of Shaw, the appellee herein and complainant below, but he was only a nominal purchaser. The money was paid by the assignee, Daniels, out of the trust funds. Shaw was acting at the time as Daniels' clerk. The payment was entered at the date in the account kept by Daniels as assignee, upon his books. The return of the sheriff upon the execution does not show a sale of each lot separately, but merely that all the lots sold for $1,653.78, which satisfied the execution. Neither does the sheriff's deed, which was not made until June 29, 1868, and was then made to Shaw, show what was bid upon this lot.

One of the notes secured by the mortgage from Bryan to Wylie, fell due on the 15th of April, 1858, and was not paid by Reed and Watkins, who had undertaken its payment. Wylie lived in the city of Washington and had assigned the note to Withers, a banker of the same city. Bryan, being the maker of the note, in order to preserve his credit, and not, as he testifies, to discharge the note, sent on the necessary funds to Wylie to redeem it from Withers, and had Wylie send it back to Mather & Taft, attorneys in Chicago, for the purpose of enforcing payment through the mortgage.

Bryan had an undoubted right to cause this to be done, and did not, by advancing the money to Wylie for the redemption of the note, discharge the lien of the mortgage, as between

himself and Watkins or Watkins' assignee, since, by the express
terms of the deed from Bryan to Reed and Watkins, the lot was
made the primary fund for the payment of the debt, and its
payment was expressly assumed by Reed and Watkins.    The
mortgage contained a power of sale, and Mather, acting under
a power of attorney from Wylie, proceeded, after due advertise-
ment, to make the sale on the 19th of July, 1858, to pay the
note which was past due, and also that which would mature
the next year.    This was in accordance with the terms of the
mortgage in case of default and sale.    The amount estimated
to be due on the mortgage was $4,640, and the premises were
bought at the sale by Beach, who held the junior mortgage,
at that price.    He paid the $4,640, received a deed from Wylie,
and at once entered into possession of the premises and has
remained in possession to the present time.

On the 6th of June, 1868, Shaw, claiming to be the owner
of the mortgaged premises as purchaser under the Prince judg-
ment and execution, filed a bill against Beach to redeem, and
on the final hearing a decree was pronounced authorizing a
redemption, charging Beach with rents and profits towards the
payment of his bid, allowing him nothing upon the mortgage
from Watkins to him, and requiring him to convey to Shaw
his title acquired under the Wylie sale, on the receipt of the
balance found to be his due.    From this decree Beach prose-
cuted an appeal.

The chief, and indeed, upon the evidence, the only ground
for attacking the sale to Beach, is, that it was made by an
attorney, and in the absence of the donee of the power, which
this court held in *Taylor* v. *Hopkins*, 40 Ill. 442, could not be
legally done.    Admitting the sale could have been avoided by
a proceeding instituted in due time, and by the proper parties,
the question is, whether the complainant in this record occupies
a position entitling him to call it in question.

The error running through the argument of counsel for
appellee, consists in the assumption that the complainant, Shaw,
was really a purchaser at the sheriff's sale.    He was not a

purchaser in any just sense, not in such a sense as to give him the slightest equitable right or interest in the property. He was a purchaser only in name. Although this and the other lots were struck off in his name, and the sum of $1,653.78 was paid upon the bid, not a dollar of it was paid by him. That sum, it is conceded, was paid by Daniels as assignee of Watkins, the judgment debtor, with money received from the property assigned to him by Watkins. As already stated, Shaw was Daniels' clerk. Why Daniels, through Shaw, bid in the property and paid the money does not appear, but the presumption is, that he regarded the property levied upon as worth more than the amount of the judgment, and that he supposed he would, in the end, be increasing the funds in his hands by bidding in the property and paying the judgment from the trust funds. Whatever may have been his motive, that is what he actually did, and as he testifies that he subsequently closed up the assignment, the presumption is that his course was satisfactory both to Watkins and to the creditors. What finally became of the other three lots sold by the sheriff, this record does not disclose, but we suppose, when these premises were subsequently sold under the Wylie mortgage, to pay a debt amounting to $4,640.00, which was the oldest lien, and which was not provided for in the deed of assignment, the assignee gave himself no further uneasiness in relation to this property. This also explains why no deed was ever taken out upon the sheriff's certificate of purchase until about ten years after it might have been demanded, and no claim was made against Beach, for the property. Shaw then appears, files his bill to redeem, procures a deed from the sheriff, asks that the rents of the property be applied towards the extinguishment of Beach's claim as a purchaser under the Wylie sale, that the title derived under that sale be conveyed to him, that Beach be cut off from all benefit of his own mortgage for a large amount of money loaned Watkins, and that Shaw himself be decreed to be the owner of the property in his own right, though he has never paid one dollar upon it, and is really, in equity, no more entitled to set

aside the sale to Beach as irregular, and claim the title for himself, than would be any other person who might regard the property as a desirable possession.

What the effect of the payment by Daniels of the Prince execution, out of the funds in his hands as assignee, would have been, as between Beach and the creditors provided for in Watkins' deed of assignment, it is unnecessary to consider. The assignment has long since been closed up, and the assignee, as he swears, has been released. But as between Beach and Watkins, it is clear the payment by Daniels was simply an extinguishment of the lien of the judgment, and let in the mortgage to Beach as the incumbrance next in rank to that made by Bryan to Wylie. If Watkins were seeking to redeem for his own benefit, he would be required to pay, not only the amount of Beach's bid at the Wylie sale, but the amount of the mortgage to Beach.

If, then, Shaw were entitled to redeem at all, he would have to redeem as the naked assignee of Watkins' title, having paid no valuable consideration, but standing in his shoes, and he could claim no better terms of redemption than the court would give to Watkins. But in this proceeding, as it now stands, he has no right to. redeem. He files the bill, not as one holding a legal title for the use of Watkins, and asking to redeem for his benefit, but he claims the property in his own right, for his own use, and on the utterly untenable ground of purchase. An appeal to the equity side of the court, upon a claim more thoroughly unsubstantial, is rarely made. The case is singularly bald. We have sought in vain a solitary element of equity in the complainant's demand. He claims as a purchaser, but is not one. He asks to be decreed the ownership of property for which he never paid a single dollar, and not only that it may be given to him without a particle of consideration, but that it be taken from one who has paid for it and advanced upon it its then full value, amounting to some ten thousand dollars. He asks that, through a transaction which, so far as he was concerned, amounted merely to a

payment by a judgment debtor, with his own money, of the judgment debt, he should, by some legal legerdemain, be clothed with the equitable rights of a purchaser for a valuable consideration.

A court of equity gives or witholds its remedies according to the equity of the case made by the complainant. A suitor must not only come to the court with clean hands, but he must come as well with rights in the subject matter of his bill entitled to protection, and resting upon equitable grounds. It is immaterial how irregular may have been the sale under which Beach acquired the title and possession of the property, unless the court is asked to investigate that question by some person who has an equity of his own entitled to protection. *Nixon* v. *Cobleigh,* 52 Ill. 387. When Watkins, or Daniels as assignee for the benefit of creditors, if there are any yet unpaid, shall file a bill, we will consider their equities, if not lost by *laches,* but as to the case now before us, brought by Shaw for his own benefit, and not as trustee for Watkins or the creditors, we simply say he shows no equity in the property which demands the protection of the court.

When asked to administer equitable relief, the court looks through the forms of transactions to the substance. In the circumstances under which it was given, the mere certificate of purchase issued by the sheriff to Shaw, amounted to nothing. Of itself, it would have been *prima facie* evidence that he had acquired certain rights. But when the facts are disclosed, we see he acquired none as against Watkins, his grantees or creditors. The certificate was a mere sham. It rested upon a falsehood. The name of Shaw was used as a mere matter of form, and that he himself attached to it no importance, is shown by the fact that for ten years he made no claim, and did not even take out a sheriff's deed.

The decree is reversed and the cause remanded.

*Decree reversed.*

The foregoing opinion was filed of the September term, 1870, and at the September term, 1871, a petition for a rehearing was presented and allowed, and afterwards the following additional opinion was filed as of the latter term.

Mr. CHIEF JUSTICE LAWRENCE delivered the additional opinion of the Court, on the rehearing :

The foregoing opinion, of September term, 1870, having been again considered by the court, on the re-argument allowed in this case, we see no reason for changing the views therein expressed. The counsel for appellee seems, from his argument, to misapprehend the position taken in the opinion. He cites various authorities for the purpose of showing that the holder of the legal estate under the mortgagor, is the proper complainant in a bill to redeem, and that it is immaterial whether he holds such estate as a trustee for others, or claims it in his own right by a conveyance from the mortgagor made without consideration. This proposition we have had no intention of denying, and it is hardly necessary to cite authorities in its support.

But the complainant in this case is asking something more from the court than its aid in the exercise of a plain right of redemption from an unforeclosed mortgage. He is also asking us to set aside a sale made some ten years before filing his bill, on the ground of an irregularity in the mode of conducting it, that is shown not at all to have affected its fairness, and at which sale a third person became the purchaser in perfect good faith, paying for the property a sum of money that, added to his own incumbrance, considerably exceeded its value, and receiving immediate possession in which he has been undisturbed until the filing of this bill. In this case, we should have probably held the delay of ten years in questioning the sale would have been, of itself, in view of the peculiar circumstances, a sufficient reason for not setting it aside, if that fact had been raised by the appellant in his answer, as required by the case

of *School Trustees* v. *Wright,* 12 Ill. 441, an authority we are reluctant to overrule, but with which we are not altogether satisfied when applied to cases in which the *laches* appears upon the face of the bill. Now, while we concede, as claimed by appellee's counsel, that a grantee of the mortgagor, whether claiming as trustee for others or in his own right, and whether a purchaser for value or a mere volunteer, would have the same right to set aside the former sale as the mortgagor himself, yet it by no means follows that a court of equity would set it aside for the benefit of one who has acquired the naked title of the mortgagor in the mode disclosed by the present record. This mode is sufficiently explained in the former opinion. He paid nothing. His name was used merely because he was the clerk of the assignee. What became of the other property, in connection with which this was sold *en masse,* does not appear. But the assignee, probably regarding this property as lost by the foreclosure, neglects to take from the complainant, his clerk, an assignment of the sheriff's certificate of purchase, and ten years later the complainant sues out a sheriff's deed, and, the assignment having long since been settled, claims to own this property in his own right, and on that ground files his bill asking the court to set aside, for his personal benefit, the sale made under the mortgage, and to decree a conveyance from Beach to himself as owner in his own right. In this bill, in which he claims the property as purchaser for a valuable consideration and owner in his own right, he makes Watkins a party defendant, with a view, we suppose, of cutting off any interest claimed by him. That the bill was not filed in the name of Shaw with the consent of Watkins, and for his benefit, is evident not only from the face of the bill, but from the evidence of Watkins himself, who was called by defendant as a witness, and from whose testimony it appears he knew nothing about the suit and had nothing to do with its prosecution.

The presumption from this record is, that he is entirely content with the sale under the mortgage, and has never sought,

and does not now seek, to have it set aside.

When, then, we remember that the only persons who have any real interest in this property, entitling them to call in question the regularity of the sale under the mortgage, are either Watkins, or his assignee, Daniels; as trustee for Watkins' creditors, or the creditors themselves named in the assignment, and that this bill sets up a title in complainant for his own use merely; and when we consider how this title was acquired, we must repeat what we said in our former opinion, that the complainant's case is singularly bald. To say that it is like the case of a voluntary grantee of a mortgagor coming to redeem the mortgage, is an entire misapprehension of the true position of the complainant, as disclosed upon the face of this record.

But it is urged that though the complainant is not prosecuting this suit for the benefit of Watkins, he is prosecuting it as trustee for the unpaid creditors of the second class in the assignment from Watkins to Daniels, or at least, that the court can not say he is not so prosecuting it. It is enough for us to say that he does not stand in that position on the record. He is here claiming to own this property in his own right, and the proof shows that he does not. The proof shows that if Watkins and his creditors in the assignment to Daniels, are satisfied with the sale under the mortgage, it ought not to be disturbed. When the complainant insists in the argument that he is appearing for the creditors, we must reply that he should have so stated in his bill, and Daniels and the creditors should have been co-complainants. We then should have had a bill which the proofs would have fitted. The absolute necessity of having not only Watkins before the court, but also Daniels, and the creditors for whose benefit the complainant pretends to prosecute, is manifest from this single consideration. The money paid by Daniels on the execution sale, when this certificate of purchase was issued to complainant, was paid out of the fund held by him as assignee. Now, if those debts are paid or discharged, the residuary interest in the property would go back

to Watkins, and he would be the person entitled to redeem from Beach. But he, in redeeming, would clearly be obliged to pay, not only the mortgage under which the sale to Beach was made, but also the Beach mortgage. Whether the creditors under the assignment would be equally obliged to redeem from the Beach mortgage, is a much more difficult question, and one which we ought not to decide without giving them an opportunity of being heard. Beach also should have an opportunity of contesting the indebtedness claimed to be due.

Our view of the case is briefly this, and we re-state it to prevent a further misunderstanding, either willful or unintentional: The only persons entitled to call in question the regularity of the sale to Beach, are Watkins, occupying the position of mortgagor, Daniels, his assignee, or the creditors, through Daniels as their trustee. If these parties are content to waive the irregularity in the sale, no one else has a right to complain. If, however, they or any of them wish to redeem, while the bill would be properly filed in the name of Shaw as the grantee in the sheriff's deed, they should also be made parties, in order to a proper taking of the account and a proper adjustment of all the equities, and the bill should be framed for the assertion of their equities and to meet the facts as they exist. If they do not wish to prosecute, this complainant has no equities of his own to assert, and the unavoidable inference would be that the legal title which his counsel urges so strenuously, as vested in him by the sheriff's deed, was obtained by an improper use of the sheriff's certificate of purchase, without the concurrence of the real owners, ten years after it was filled out in his name, as clerk of the assignee. If, without the knowledge of Watkins, or of Daniels, or of the creditors, he has at this late day discovered this certificate, and by procuring a sheriff's deed, sought to acquire the title to this property for his own behoof, then, notwithstanding he has, upon the face of the papers, the title of the mortgagor, yet we must hold, when he comes into court asserting such title as his own, he comes with no equities in his favor that should induce the

court to disturb a sale that has never been questioned by any of the parties having an actual interest in the property.

Of course we speak only of his claim as presented upon this record. If he is prosecuting this suit for the benefit of persons having an interest in this property, which entitles them to question the sale, they should be brought before the court as parties to a bill framed to correspond with the facts. The complainant will have leave to amend his bill and make new parties, upon paying the costs.

The decree is reversed and the cause remanded.

*Decree reversed.*