(*Circuit Court of Cook County. In Chancery.*)
## Cleveland Rolling Mill Co.
### vs.
### Henry Crawford, Great Southern Railway, et al.
(January, 1891.)

1. CREDITORS' BILL—APPOINTMENT OF RECEIVER IN FOREIGN STATE NO BAR TO. The pendency of a creditors' bill and the appointment of a receiver in a foreign state is no bar to the filing of a similar bill here.

2. RECEIVERS—APPOINTMENT IN FOREIGN STATE—NO TITLE TO ASSETS HERE. The appointment of a receiver in a foreign state does not prevent a legal or equitable attachment in Illinois as the receiver in the foreign state acquires no title to assets here.

3. CORPORATIONS—RIGHT TO ISSUE CAPITAL STOCK IN PAYMENT OF ITS DEBTS. A railroad corporation has the right to issue its stock to pay for the construction of its own road.

4. CREDITOR'S BILL BY CREDITOR OF CORPORATION. Where the creditor of a corporation seeks to compel a third person to account to the corporation, the creditor's equities are derivative and must be sought through the equities of the corporation.

5. CORPORATIONS—ENQUIRY INTO TITLE OF DIRECTORS TO THEIR OFFICE. The court will not enquire whether or not a contract is illegal because approved by a *de facto* and not a *de jure* board of directors as it cannot enquire collaterally into the title of the directors to their office and it was sufficient if the contract was made by a *de facto* board.

6. CORPORATIONS—MAJORITY STOCKHOLDERS CONTRACTING WITH CORPORATION. When the owner of 99 per cent of the capital stock of a corporation enters into a construction contract with the corporation the contract is not void, if made in good faith, with a *bona fide* board of directors acting in the usual discharge of their duties.

7. JUDGMENT AGAINST CORPORATION—BINDING ON STOCKHOLDERS. A stockholder cannot, in the absence of fraud, challenge a judgement against the corporation.

8. CORPORATIONS—LIABILITY OF OWNER OF ALL STOCK.  Where the owner of all the stock of a corporation usurps all the functions of the board of directors, and takes possession of all the corporate property and controls it as his own private property, he must be held to the same liability as the directors would have been, had they converted the property to their own use.

9. CORPORATIONS—CAPITAL STOCK.  The capital stock of a corporation is a trust fund for the benefit of creditors and neither the board of directors nor the corporation can give it away or divert it to the private use of the directors or other officers of the corporation.

10. CORPORATIONS—USED AS A CLOAK FOR INDIVIDUAL ENTERPRISE.  The law authorizing the formation of corporations never intended that persons should carry on individual enterprises under the guise of corporate action.

11. STOCKHOLDERS—DUTY TO CREDITORS.  In so far as shareholders have power to control the funds in which the corporate creditors have an interest, shareholders must be regarded as occupying towards them a position of trust.

12. CORPORATIONS—LIABILITY OF OWNER OF ALL STOCK SELLING CORPORATE PROPERTY.  Where the owner of the entire stock of a corporation sells the corporate property and consents to the foreclosure of a mortgage thereon, in consideration of a certain payment, and for the purpose of cutting off general creditors, the court will compel such owner to account for the property on the proceeds of the sale.

13. CORPORATIONS—RIGHT TO PREFER CREDITORS.  Where a corporation is insolvent and a receiver is in possession of its property, such property can be appropriated only to the payment of the corporate debts.  A director who is also a creditor can not apply such property to the payment of his debt, to the exclusion of other creditors.

14. CORPORATIONS—RIGHTS OF CREDITORS.  A corporation does not exist solely for the benefit of stockholders.  It also exists for the benefit of its creditors.

15. CORPORATIONS—INDIVIDUAL ENTERPRISES—LIABILITY OF OWNER OF ENTIRE CAPITAL STOCK.  If corporate form is used for individual enterprises, the individual as to creditors stands as a trustee *ex maleficio*, usurping the power and place of the legal trustee, the corporation.  Any creditor would have the right to call him to account and he could not shield himself behind the nominal action of the corporation by its "dummy" board of directors.

Bill filed by the Cleveland Rolling Mill Company against Henry Crawford, H. H. Porter and the Chicago & Great Southern Railway Company for an accounting.  Demurrer to same heard before Judge Murray F. Tuley.  The facts are stated in the opinion.

*Samuel W. Packard,* for complainant. .
*Gardner, McFadden & Gardner,* for defendants.

TULEY, J. :—

The allegations of the bill of complaint in this case are anomalous and probably very difficult of proof, but in deciding the demurrer, however, they must be taken as true. The bill is a creditor's bill, founded on a judgment against the defendant corporation for $4,365.74; a return of *nulla bona* on an execution issued thereon, and seeks an accounting for certain property, and assets of the corporation alleged to be in the defendant, Crawford's, possession, and of certain moneys alleged to be due Crawford from the defendant Porter which ought to be applied in the discharge of complainant's judgment.

I will first dispose of some minor points before passing upon the main question made by the bill.

The pendency of a creditor's bill in Indiana upon the judgment of *Hack et al.,* in which a receiver was appointed, is no bar to the prosecution of this suit. The receiver in that case acquired no such title, by his appointment, to assets in this state as would prevent a legal or equitable attachment thereof by an Illinois creditor. *Rhawn v. Pearce,* 110 Ill. 356.

Nor does the pending of a creditor's bill in Indiana prevent the sustaining of a creditor's bill in this state. The complainant can have no relief as to the $700,000 of stock issued by Crawford, as president, to. himself, as the board of directors subsequently ordered it paid to him on account of the construction contract. It then ceased to be unpaid stock. A corporation has the right to use its own stock in payment for the construction of its own road  Crawford cannot be charged as a trustee in an express trust by the receipt of one million of bonds for the purposes expressed in the unsigned memorandum, for the reason that it does not appear therefrom that he agreed to appropriate the proceeds of the bonds to the payment of the creditors of the corporation. His agreement to furnish money to pay such creditors does not make him a trustee.

Treating the relations between Crawford and the board of

directors as in good faith and such as the law presumes to exist between them, the bill is defective in not making the specific allegation that Crawford has not accounted to the corporation for the stocks and bonds delivered him. In such a case the creditors' equity is derivative and must be sought through the equities of the corporation.

It is alleged that the bonds and stocks agreed to be paid for the construction of the road were greatly—four times, it is alleged—in excess of the cost thereof. No fraud is charged on the directors as to the making of the construction contract, and as no statement is found in the bill as to the actual cost or value of the work, the court cannot grant relief as to such contract, solely because it is alleged that an excessive price was agreed to be paid therefor.

The contract, it is charged, was never legally entered into because the Crawford board was only a *de facto* and not a *de jure* board. The court cannot in this proceeding inquire into the title of the directors to their office, and it was sufficient if the contract was made by a *de facto* board.

The mere fact that Crawford owned 99-100 of the stock would not make the construction contract void as being in effect a contract with himself. One great object in becoming a stockholder in a corporation is to avoid individual liability. No reason is perceived why such a stockholder may not enter into a construction contract, if made in good faith, with a *bona fide* board of directors acting in the usual discharge of their duties.

Crawford cannot challenge the judgment against the corporation. A judgment against the corporation is conclusive, in the absence of fraud, upon all stockholders. Thompson, Stockholders, secs. 329, 337, and cases cited.

This disposes of all the minor points raised upon the demurrer.

The main question and one of great importance is whether taking the allegations of this bill as true, can the defendant Crawford be held chargeable as trustee, and accountable, as such, to creditors for the property and assets of the corporation which came to his hands? The bill alleges in substance that about the year 1881 Crawford purchased the block

coal road which had about twenty miles of completed road, and shortly thereafter he bought the Great Southern railroad, an uncompleted road some 100 miles in length, and then consolidated the railroads under the laws of Indiana under the name of the Great Southern Railway. He undertook the completion as if it was private property, using large amounts of his own money in so doing, without consulting the nominal board of directors. That when he made the purchase of the Great Southern Railway he made it a condition that the board of directors should resign so that he could appoint his own board. That he appointed relatives and employees of his own as directors, and caused them to enter into a construction contract with himself by which he was to receive all the property of the corporation, and its bonds and stocks, to an amount several times in excess of the cost of construction.

It is alleged that in entering into the construction contract and in all their other acts, the members of the board of directors did not act of their own volition, but were simply instruments to register the wishes and desires of Crawford. That it was a bogus or "dummy" board and that its intervention in the affairs of the company was merely perfunctory and as the agent of Crawford. It is alleged that Crawford was as absolutely in the control of the corporation and of its assets as he could have been had it been a corporation sole, and he the member thereof, and therefore that equity should regard the substance and not the form of the transaction, and hold that in making its construction contract he, Crawford, was the only party to the same; that it was in effect a contract by himself with himself. Taking the allegations of the bill as true, there was only a form, a semblance of a corporation, and the building of this railroad was an individual and not a corporate enterprise. If, as alleged, Crawford did in fact usurp all the functions of the board of directors, and did take possession of the corporate property, and manage and control it as his own private property, and convert it to his own use, he must be held to the same liability as the directors would have been held, had they converted the property to their own use. It is not only charged that

13

he ignored the board of directors and usurped its functions, but also, that he ignored the construction contract and at his own will, without consulting the board, made contracts and contracted debts in the name of the corporation for work included in the construction contract, many of which debts still remain unpaid. It is the recognized American doctrine that the capital stock and property of a corporation is a trust fund, held primarily for the payment of creditors, and that neither the board of directors nor the corporation can give it away or divert it to the private use of the members of the board, or other officers of the corporation. If the board cannot do so, one who usurps its functions and takes possession of the trust property and uses it and converts it as his own individual property, cannot do so.

If B usurps the functions of A and takes possession of the trust property of which A is the trustee, B will be held to account as trustee *ex maleficio*. And in this case if the allegations of the bill are true, Crawford must be held to account as trustee *ex maleficio* for all the corporate property which has come into his possession. It is the duty of a court of equity to strip the transaction of its corporation disguise and hold the real actor responsible. The law authorizing the formation of corporations never intended that persons should carry on individual enterprises under the disguise of corporate action. To do so is a fraud upon the law itself.

It also appears by the bill that the defendant Crawford entered into an arrangement with a syndicate which held, as collateral to Crawford's indebtedness, all the bonds and stock of the corporation which had then been issued, by which he sold the railroad to the syndicate and agreed that the construction contract should be cancelled, the trust deed securing the first mortgage bonds be foreclosed, and the property of the corporation sold, and thereby the claims of the creditors and stockholders extinguished, in consideration of the payment to Crawford of $250,000; of the profits to be made by such foreclosure and sale; or, if the syndicate should buy in the railroad at such foreclosure sale, it would form a new corporation and give him one-third of the new stock, or the $250,000, at the option of the syndicate. It was in fact a

sale of the equity of redemption in all the property of the corporation by the owner of nearly all the capital stock to the mortgagee for such owner's (Crawford's) own benefit and advantage. Says Taylor: "In so far as shareholders constituting the body corporate have power to control the funds in which creditors have legally protected interests, shareholders must be regarded as occupying towards them a position of trust, for the latter have ordinarily no voice in the corporate management." Taylor, Corp. sec 710; see also *Railroad Co. v. Howard*, 7 Wall. 392.

No matter what form this sale of the road to the syndicate took, it was in substance a sale of the railroad by a shareholder owning practically all the capital stock, to cut off general creditors and benefit himself at their expense. A court of equity looks through the forms of transactions to the substance. *Beach v. Shaw*, 57 Ill. 17. Crawford must in such case account to the creditors either for the property of the corporation in which they had a legally protected interest, which was thus sold by them, or for the proceeds of the sale received by him.

There is also another ground upon which Crawford is liable to account to creditors. At the time of this sale to the syndicate the corporation was in a state of bankruptcy and in the hands of a receiver whom it is alleged Crawford procured to be appointed. That being the case, the corporate property was a trust fund for creditors which it was the duty of the directors and of the parties in control thereof to appropriate only to the payment of the corporate debts. No director being a creditor could lawfully appropriate it to the payment of his debt, to the exclusion of other creditors, yet this in substance is what Crawford, a director and president of the corporation, has done. If such acts can be done with impunity, then the law authorizing corporations is to enable private individuals to successfully defraud *bona fide* creditors.

A corporation is a composite artificial being. "It is," says Taylor, "the manifestation of a body of rules of law in legal relations, between persons who have fulfilled the prerequisite conditions of fact."    .    .    .

"But the legal relations which arise immediately conse-
quent upon incorporation are not its entire consequences. In-
corporation has a further indirect result, namely, that future
acts in respect to corporate enterprises will give rise to legal
relations different from those which such acts would have
occasioned, had there been no incorporation." Taylor, Corp.
secs. 28, 29.

A corporation does not exist solely for the benefit of stock-
holders. It exists also for the benefit of creditors when it
has any. Under the American doctrine a corporation is a
trustee of the corporate property for its creditors, and cred-
itors have an equity as to the corporation property, superior
to that of the stockholders. The creditor also has the right
to demand that this trustee, the corporation, shall seek relief
as to such trust property, the legal title to which is in its
name, and if it refuses, or if the corporation is dominated
by influences adverse to the creditor, the creditor himself may
seek relief in the name of the corporation to the extent at
least of the payment of his debt.

This right to inquire into the disposition that has been
made of the corporate property becomes a right inherent in
the constitution of the corporate body, and absolutely neces-
sary to the protection of the creditors' interests in the prop-
erty of the corporation. It may be said to be a primary
equity and not a derivative one.

If the form of a corporation is used, as in this case, for
individual enterprises and purposes, the individual, while he
would be estopped to deny the title of the corporation to the
property—he would, as to creditors, stand as a trustee *ex
maleficio,* usurping the power and place of the legal trustee,
the corporation. Any creditor or other *cestue que trust,* would
have the right to call him to an account. He could no more
shield himself behind the nominal action of the corporation
by its "dummy" board of directors than a guardian, or exec-
utor *de son tort* could shield himself behind the accounts of
the legal guardian or executor procured to be made in the
name of such legal guardian or executor. *Lehman v. Roth-
barth,* 111 Ill. 185.

The position taken by the court in this case may be without precedent, but no new equity in favor of creditors is attempted to be created or new principle announced. It is only an application of well established maxims and rules of equity to a new phase of business and commercial life. ''Equity regards the substance not the form of the transaction.'' Why should courts of equity continue to shut their eyes to that which all the world can see, to-wit, that it has become a common practice in the business world to use corporation forms in the prosecution of individual schemes, upon the failure of which, the loss is saddled upon innocent creditors and minority stockholders.

Creditors are absolutely without any remedy unless the doctrine here announced can be sustained. If it cannot, the doctrine of the American courts, that the capital stock and other property of a corporation is to be deemed a trust fund for the payment of the debts of the corporation, may as well be abandoned at once.

The demurrer must be overruled and the defendants held to answer.