## In re SCOTT.
### No. 4421.

District Court, W. D. Michigan, S. D.
Oct. 2, 1931.

William K. Clute, Rolland M. Shivel and Robert McAllister, all of Grand Rapids, Mich., for Committee of Grand Rapids Bar Ass'n.

Francis L. Williams, of Grand Rapids, Mich., for Edward De Groot.

Cornelius Hoffius, of Grand Rapids, Mich., for bankrupt.

RAYMOND, District Judge.

In the petition for review of the referee's order declining to ratify his nomination and election as trustee in bankruptcy, petitioner alleges that he was a candidate for the office and was supported therefor by a majority of the creditors in number and amount, that he was in no way legally disqualified, and that the order should be set aside.

It appears that at the first meeting of creditors none was present in person and only one creditor was represented. The proof of claim of this creditor authorized the Grand Rapids Credit Men's Association to attend all meetings of creditors and to vote in the election of trustee. It was presented by Shirley De Groot, the collection manager for said association, who named Edward De Groot, the secretary of the association, as trustee in bankruptcy. The only objection to the election was made by the referee.

The substantial grounds upon which refusal was based may be stated as follows:

First, that the Grand Rapids Credit Men's Association has an interest on behalf of such claims as it holds which gives rise to an influence in conflict with the interests of creditors generally, and with the interests of such creditors as are not members of the association.

Second, that one of the substantial purposes of the organization is to actively solicit and secure the representation of claims in order to vote them to secure the trusteeship for one of its officers or agents, and that the association and its employees are therefore directly participating in an effort to get claims in order to control or influence the election of a trustee, contrary to the rules of this court promulgated in September, 1930.

Third, that the practice of the association in procuring proofs of claims for representation in bankruptcy cases is in violation of Act 354 of the Public Acts of Michigan of 1917, the clear purpose being to enable the association to appear and practice as an attorney at law for persons having claims before the bankruptcy court.

Fourth, because the invariable practice of the Grand Rapids Credit Men's Association is contrary to the provisions of section 72 of the Bankruptcy Act (11 USCA § 112), which provides in substance that no trustee shall in any form or guise receive any other or further compensation for his services than that expressly authorized and prescribed by the act, and that the common practice of the association is to not only appropriate all trustees' fees for itself, but also to charge a collection fee approximating 15 per cent. on all claims upon which it or its employee as trustee receives dividends in bankruptcy proceedings.

Fifth, that as a matter of public policy the method and practice of the Grand Rapids Credit Men's Association affects the functioning of the bankruptcy court.

It may be stated that the qualifications, experience, character, and personal responsibility of the petitioner are not in question.

Some general considerations relative to the office of trustee in bankruptcy are important in the determination of the questions presented. It has long been recognized that he is an officer of the court; that he stands in a fiduciary relation to creditors; that he represents all creditors; and that he should have no interest to serve other than to conserve the estate. Judge Swan, in Re Columbia Iron Works (D. C.) 142 F. 234, 237, stated the relation of the trustee in bankruptcy to the court as follows: "Equally removed from the interference of the creditors is the action of the trustee, so long as that officer shall act with fidelity to his trust. He is chosen to represent all the creditors—not a majority, however great. In re Lewensohn, 9 Am. Bankr. Rep. 368, 121 F. 539, 57 C. C. A. 600. The purpose of vesting the estate of the bankrupt in him is to commit to an impartial administration its management for the benefit of each and all the creditors. The creditors, are the cestuis que trustent. He gives a bond for the faithful performance of his duty to all the beneficiaries. His office is one of personal confidence and cannot be delegated. He has no right to impose his duty on others, and if he does he will be responsible to the cestuis que trustent. 1 Perry on Trusts, § 402; Turney v. Carney, 5 Beav. 517; Taylor v. Hopkins, 40 Ill. 442. Subject to the control of the court and statutory limitations, the entire administration of the trust estate is in his hands. He cannot, therefore, yield his judgment to that of a majority of the creditors, merely because they are a majority, without a breach of his trust. To thus abdicate his duties is to make himself a mere passive trustee. It is proper that he should consult with the creditors upon important matters and get the benefit of their knowledge and experience, but the responsibility of decision rests upon him."

The Circuit Court of Appeals of the Sixth Circuit has recognized the fiduciary relation of the trustee in the following language: "The trustee is the hand of the court. He stands as its agent to liquidate the assets, to protect them, and bring them before the court for final distribution. He is not, in fact, more representative of one creditor or claimant than another. The trustee, in the procedure, because he has the legal title to the assets, and is charged with the duty of saving and protecting them, represents the general fund. He is not a purchaser, but as the title of his office imports, he is trustee for all who have interests, and according to those interests. He himself has no interest, and there is nothing in his representation which stands between the court and those who have interests, for the recognition and protection of which they appeal to its authority. We have thus explained our views upon this subject, founded, as they are, upon what we conceive to be fundamental and controlling principles. Other courts, for whose opinions we entertain great respect, have held, apparently, somewhat different views on this subject." In re Ducker, 134 F. 43, 47.

In the recent case of Garrison v. Pilliod Cabinet Co., 50 F.(2d) 1035, 1036, the Circuit Court of Appeals of the Tenth Circuit, in approving an order of the District Court which affirmed the action of the referee in bankruptcy in sustaining an objection to votes of creditors cast for one Mr. E. Garrison, the executive manager of the Wichita Association of Credit Men, as trustee, said:

"The selection of an assignee as trustee is presumably improper, as he is bound to account for his dealings with the bankrupt's property, from which conflicts with the creditors may result. Remington on Bankruptcy, § 1104, citing In re Clay (C. C. A.) 192 F. 830. He may be committed in favor of creditors whose claims are invalid or preferential in bankruptcy. Demands may have arisen under the assignment, which will provoke contests between claimants and creditors, and even plenary suits with the trustee may be requisite to determine them. See Randolph v. Scruggs, 190 U. S. 533, 23 S. Ct. 710, 47 L. Ed. 1165; May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870. Obviously, a trustee should not be selected when his position may be inconsistent with the rendition of his duties to creditors in bankruptcy. The presumption against the propriety of appellant's selection as trustee has not been overcome in this case.

"His disqualification sufficiently appears. He has no standing that entitles him to complain of the adverse rulings. There was no error, therefore, in refusing the votes offered in his favor and approving the selection of his opponent."

In the case of In re Leader Mercantile Co. (D. C.) 29 F.(2d) 570, 571, the referee had vetoed the election of one Vernor Hall to act as trustee in bankruptcy for the primary reason that he was the manager of the North Texas Adjustment and Credit Interchange Bureau, a voluntary association of local creditors specializing in liquidating insolvent estates. The District Court affirmed the action of the referee, and in so doing stated: "As Mr. Hall is shown by this certificate to be the manager of the North Texas Adjustment and Credit Interchange Bureau, and also sought to have this bankrupt make a general assignment for the benefit of its creditors and secured powers of attorney from the creditors of the estate, which were voted for him as trustee of the estate, I think that the referee was correct in his decision not to approve the selection of Mr. Hall as the trustee of the estate, feeling that he was not in a position to render that impartial service as

trustee for all of the creditors of the estate that he would for certain of the creditors."

An appeal was taken to the Circuit Court of Appeals of the Fifth Circuit, where the decision of the District Court was affirmed. See 36 F.(2d) 745, 746. The court said:

"The referee is vested with authority by the act to preside over the election of a trustee and to say what creditors have the right to vote. It would be useless for him to do so if he lacked the further authority to set aside a result inimical to the best interests of all the creditors and contrary to the general principles underlying the orderly administration of the bankruptcy law. * * *

"While undoubtedly the policy of the courts is to permit the creditors to have the broadest latitude in the administration of the bankrupt's estate, nevertheless the courts are charged with the duty of supervision, and there is always the power in a court to intervene to prevent the selection of an incompetent person as trustee. Of course, this power is not to be used arbitrarily but only for good cause, in the exercise of sound judicial discretion."

The petition for writ of certiorari from this decision was denied by the United States Supreme Court. See Graham-Brown Shoe Co. v. Holliday, 281 U. S. 760, 50 S. Ct. 411, 74 L. Ed. 1169.

■ Leaving aside all other considerations, it seems to the court that the action of the referee in this case might well be affirmed upon the single ground (if no other existed) that under the rules of the association the trustee's fees belong to the association and not to the trustee. For many years, both in England and the United States, it has been the rule that a public officer might not assign his salary upon grounds of public policy based on the necessity of securing efficiency of public service by insuring that the funds provided for its maintenance shall be received by those who are to perform the work and at the periods appointed for their payments. The same rule has been frequently applied to masters in chancery (see Shannon v. Bruner [C. C.] 36 F. 147); to receivers (see Colonial Bank v. Sutton, 79 Misc. Rep. 244, 139 N. Y. S. 1002); and to executors, administrators, guardians, and trustees. In Matter of Worthington et al., 141 N. Y. 9, 35 N. E. 929, 23 L. R. A. 97, where a question arose as to the assignment by an executor of his commissions, the court said: "Until ascertained and liquidated at the times and in the manner authorized by law, the commissions are

not subject to the executor's disposal, but the right to them is inchoate, and, upon grounds of public policy, unassignable. There is no fundamental distinction in this respect between public and private trusts, where the statute fixes the compensation, and prescribes that it shall not become due and payable until the services have been rendered, or at stated periods during the term of service. It is well settled that a public officer cannot, during his official term, and before his salary or fees become due and payable, make a valid assignment of such salary or fees. Bliss v. Lawrence, 58 N. Y. 442 [17 Am. Rep. 273]; Bowery Nat. Bk. v. Wilson, 122 N. Y. 478, 25 N. E. 855 [9 L. R. A. 706, 19 Am. St. Rep. 507]. It is believed that the efficiency of the service to be rendered depends upon the enforcement of such a rule. If the emoluments of the office might be separated from it and transferred to another, it would leave the duties of the office as a barren charge to be borne by the incumbent. It is evident that transfers of this kind would not tend to promote activity and care in the discharge of official obligations. The same considerations forbid the recognition of an assignment by an executor of his commissions in advance of the time prescribed by law for their adjustment and payment. When the hope of compensation is gone, a strong incentive to diligence and zeal is wanting, and the temptation to be content with a lax or perfunctory administration of the trust becomes more persuasive."

The same principles apply with at least equal force to a trustee in bankruptcy in the circumstances here existing. His compensation is fixed by his corporate employer and is subject to increase or decrease at its will. To it he primarily owes his employment, both generally and as trustee. His counsel states that as a part of his duties he is required to seek to have himself or some one of his employees elected to the office of trustee in bankruptcy. His remuneration as trustee belongs at all times to others, and whether his services to the bankruptcy estate are trivial both as regards time involved and responsibility assumed, or requires the expenditure of valuable and long-continued efforts and are of great value, his reward is the same.

These considerations should at all times be given due weight by the referee. There may be, and probably are, cases in which they are not of controlling importance. There can be none in which the referee can disregard them or consider them as of little consequence. That one who seeks approval as

an officer of a court owes his primary allegiance to a board of directors, and will receive no reward for his services as such officer, must always be a matter of concern in considering the propriety of the appointment.

■■ It is held that the action of the referee in bankruptcy in administrative matters is entitled to great weight. See In re Jaffee (D. C.) 272 F. 899; In re Wink (D. C.) 206 F. 348.

The discretion exercised by the referee in such circumstances should not be lightly overruled. The other considerations upon which the referee rested his decision make it clear that it should not be in this instance. The findings of the referee that the trustee selected by creditors is in the employ of an organization which actively solicits and secures the representation of claims for the purpose of voting them to secure the election of one of its agents as trustee, whose fees shall belong to his employer, must be sustained. The fact that the agency owes a special duty to certain creditors from whom it receives fees in addition to those received as trustee, and that these duties must frequently conflict with those of the general class of creditors, must be conceded. Both section 72 of the Bankruptcy Act (11 USCA § 112) and the rules of this court are prohibitive of these relationships. The fact that in the instant proceeding such violations and consequences have not appeared does not relieve the referee of his duty to take cognizance of the general practice which he believes inimical to the proper functioning of his court.

The conclusions already stated are sufficient to dispose of the principal question presented by the petition for review, and only brief reference need be made to other reasons assigned. The persistent solicitation of claims for the purpose of either inaugurating or controlling bankruptcy proceedings is a widespread and growing evil. Ill-advised bankruptcies, expensive and unnecessary receiverships, and trustees whose primary duties are neither to the court nor to creditors as a whole, are only a few of the unfortunate consequences arising from the willingness of many creditors to surrender their rights and abdicate their duties under the Bankruptcy Act. Comprehensive powers of attorney to unknown and distant agencies and attorneys have contributed largely to these results. Efforts of courts to combat these obvious subversions of the Bankruptcy Act should have the willing co-operation of those agencies whose purpose is to work towards improve-

93

ment in the administration of estates in bankruptcy.

This may be more effectually accomplished by sincere efforts to abide by existing practice as indicated by the statute and rules of court, and to procure their amendment if obscure or ill advised, than by nonobservance.

Remington, in section 1097 of volume 2 of Remington on Bankruptcy, comments as follows: "The present Bankruptcy Act is founded on the democratic principle of creditors' suffrage—it is the creditors who elect the trustee to administer the estate. But the ballot is abused in the bankruptcy world just as in the world of politics. Creditors, after giving over their claims to their particular instrumentality for collection, are apt, short-sightedly, to abandon further care; with the frequent result that collusion, bargainings, or shiftlessness take the place of vigorous administration. In the early days of the Bankruptcy Act, the soliciting of claims by schemers was reprobated as the cause of the evils. But the solicitation of claims is no longer necessary, for on notice of the bankruptcy, claims begin to pour in without solicitations to the different agencies or organizations for collection; yet collusions, bargainings, and jobberies seem equally common. If creditors, into whose hands the policy of the Bankruptcy Act has entrusted the guardianship of insolvent estates, were more awake to the importance to their own interests of the performance of their fundamental duty of choosing and supporting virile, earnest, and independent trustees, who, in turn, would choose able, upright, and vigorous attorneys to devote adequate time to the searching out of the complicated frauds, preferences, concealments, and falsehoods, rife in insolvencies, there would be felt soon in a multitude of ways profoundly salutary effects upon the various business communities."

The purpose of the rules promulgated September 1, 1930, is clear. No suggestion of amendment or revocation has come to the attention of the court. The first suggestion of unfair discrimination in their application is made, though vaguely, in the instant proceeding. If it exists, it is subject to clear and effective remedy. Should modification of the rules be desirable, any attorney or officer of the court may present the matter.

■ It is further the view of the court that the referee was justified in declining appointment upon the ground that petitioner was engaged in the unlawful practice of law, and that he was warranted in receiving evidence as to petitioner's activities in other proceedings. In making this determination the referee was not confined strictly to what had already occurred in the bankruptcy proceeding under consideration, but it was his right and duty to consider also whether the one selected as trustee had in other proceedings before him violated the law in this regard. It is the view of the court that under the provisions of General Order No. 4 (11 USCA § 53) it is clear that any activities before the court or the referee in bankruptcy which extend beyond the mere filing of claims for others is a violation thereof. The power of attorney under which action was taken in this case included the power to vote for or against any proposed resolution in reference to the estate, in choice of trustee, to accept or refuse any composition, and do such acts as fully as undersigned could if personally present. The examination of the bankrupt and the participation in the election of a trustee by others than the creditor himself is the practice of law as generally understood and is so recognized by the courts. See In re Looney (D. C.) 262 F. 209, and In re H. E. Ploof Machinery Co. (D. C.) 243 F. 421.

It follows that the order of the referee in bankruptcy should be affirmed, and an order will be entered accordingly.